Jaret W. Weber (JW 0370)
Weber Law Group LLP
290 Broadhollow Road, Melville, New York 11741
Tel: 631-549-2000
Attorneys for non-parties

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:  JERRY MIMS,                           Chapter 13

       Debtor(s).                       Case No.:  15-73752-LAS

                                    **AFFIRMATION IN SUPPORT**

-----------------------------------------------------------------X

       1.      I am associated with Weber Law Group LLP ("WLG"), attorneys for Plaintiffs in

an ongoing civil litigation commenced in the Supreme Court of Suffolk County under Index No.

13490/2013 (the "Supreme Court Action") in which debtor Jerry Mims ("Mims) is a one of the

main defendants.

## PRELIMINARY STATEMENT

       2.      Pursuant to the submission by the undersigned counsel dated December 8, 2015,

the Court was informed of the Supreme Court Action commenced on behalf of Plaintiffs,

including but not limited to Jean J. Burden ("Burden"), Edward Jurzenia ("Jurzenia"), Walter

burden ("Walter") and Silver Sands Motel, Inc. ("Silver Sands") collectively (the "Silver Sands

plaintiffs") as against multiple defendants, inclusive of Mims.

       3.      In the Supreme Court Action, Plaintiffs allege that Burden and Silver Sands were

defrauded, forced, and coerced into entering loan transactions whereby 12 of their waterfront

properties in Greenport, New York, became encumbered by 7 mortgages with hard money

lenders as mortgagees.

1

4.    Specifically, as against Mims who acted as their attorney for all of the mortgage transactions, Plaintiffs allege that he defrauded, coerced, and manipulated Burden and Silver Sands into entering the mortgages and facilitated these frauds by forging (for Walter and Jurzenia) various documents including deeds and power of attorneys.

5.    In addition to the frauds, in each of the loan transactions, Mims, with the acquiescence and aiding of the mortgagees, received egregious amounts of the proceeds, via wire and check, that neither Burden nor the Silver Sands Plaintiffs knew were loaned or distributed.

6.    The Court, through the prior submission was generally informed with regard to the causes of action in the Supreme Court Action on fraud, forgery, related damages, and the need to have the automatic bankruptcy stay lifted to further prosecute these claims.

7.    This supplemental submission is being presented to the Bankruptcy Court with regard to the funds from these mortgages, in the approximate sum of $650,000.00 that Mims unilaterally withdrew, in cash, and other forms from his IOLA Accounts pursuant to the only records provided by Mims.

8.    These withdrawals were never distributed to the Silver Sands Plaintiffs in any manner and the ultimate status of these funds are unknown to this day.

9.    These withdrawals and Mims explanation thereof are one of the multitude of reasons that the automatic bankruptcy stay should be lifted and the Supreme Court Action allowed to continue.

10.    The Silver-Sands Plaintiffs, and specifically the undersigned counsel, must be enabled to have an opportunity to question Mims under oath and in a deposition to determine the details of these withdrawals.

11.     The Silver Sands Plaintiffs (and the undersigned counsel) understand and will willingly cede authority over these funds or the Bankruptcy Court's authority to investigate the same as any cash or assets still held by Mims would constitute assets of Mims earmarked for any secured creditor.

12.     Plaintiffs, even in the event of a filing as a creditor to Mims' bankruptcy would only be granted the status of an unsecured creditor.

13.     As a result, if the Bankruptcy Court is of the position that any investigation into these missing funds and assets of Mims is within its sole authority and jurisdiction, Plaintiffs request that they be enabled to continue prosecution of all other causes of action in the Supreme Court Action.

## RELEVANT PROCEDURAL HISTORY AND FACTS

14.     On September 1, 2015, Mims filed for Chapter 13 Bankruptcy.

15.     On or about November 11, 2015, Mims filed a motion to lift the automatic bankruptcy stay for the limited purpose of continuing the Supreme Court Action.

16.     On the motion's return date, December 8, 2015, the undersigned counsel appeared and filed an affirmation in support of the motion.

17.     The Court further instructed that a stipulation between the undersigned counsel and Mims be filed so that it may considered and ruled upon. Annexed hereto as Exhibit A is a true and correct copy of the stipulation (it is also filed independently of this motion).

## THE MORTGAGES

**I.**    **The May 9, 2008 Mortgage**

18.    On or about May 9, 2008, Mims arranged a mortgage and security agreement for

Burden and Jurzenia, as mortgagors, with Long Island Capital Management Corp. ("LI Capital),

as mortgagee (the "2008 LI Capital Mortgage").

19.    The principal amount of the 2008 LI Capital Mortgage was of $750,000.00.

### A.    The 2008 LI Capital Mortgage Closing Statement

20.    Pursuant to the closing statement for the 2008 LI Capital Mortgage, the

distribution of $512,762.56 of the proceeds was made to Mims via "Wire transfer to IOLA

account of the Law Office of Jerry M. Mims PC Bank of America wire #00260009593 Account

#******2813 Main St Patchogue Law Office of Jerry M Mims IOLA account. Annexed hereto

as Exhibit B is a true and correct copy of the 2008 LI Capital Mortgage Closing Statement.

### B.    Relevant Documents Produced By Mims

#### i.    The May 2008 IOLA Bank Statement

21.    During the course of the Supreme Court Action, Mims produced the bank

statement and ledger for the Bank of America IOLA Account for the Law Office of Jerry M.

Mims PC with the Account No. ******2813 (the "BOA Mims IOLA Account") for the Month

of May 2008 (the "May 2008 BOA Statement"). Annexed hereto as Exhibit C is a true and

correct copy of the May 2008 BOA Statement.

22.    Pursuant to the May 2008 BOA Statement, a wire in the amount of $512,762.56

was received on May 12, 2008 from the law firm of Certilman Balin Adler & Hyman LLP, the

attorneys for the mortgagee, LI Capital. See Exhibit C.

23.     The amount of the wire received by Mims is exactly the amount of the wire as demarcated on the 2008 LI Capital Mortgage Closing Statement. See Exhibits B and C.

24.     Pursuant to the May 2008 BOA Statement, the beginning balance was only $15.14 and prior to the 2008 LI Capital Mortgage wire, only $3,712.91 (through prior deposits) was in the account as of May 7, 2008. See Exhibit C.

25.     Prior to the May 12, 2008 deposit of $512,762.56, $3,675 was withdrawn, in cash, leaving only $37.91 before the wire.

26.     Pursuant to the May 2008 BOA Statement, the following cash withdrawals were made:

|  | DATE | AMOUNT OF WITHDRAWAL |
|---|---|---|
| 1. | May 13, 2008 | $3,000.00 |
| 2. | May 14, 2008 | $9,5000.00 |
| 3. | May 15, 2008 | $15,000.00 |
| 4. | May 19, 2008 | $8,000.00 |
| 5. | May 20, 2008 | $4,000.00 |
| 6. | May 23, 2008 | $1,402.23 |
| 7. | May 23, 2008 | $500.00 |
| 8. | May 27,2008 | $850.00 |
| 9. | May 29, 2008 | $2,000.00 |
| 10. | May 30, 2008 | $1,500.00 |
| TOTAL |  | $45,752.23 |

See Exhibit C[1].

27.     Pursuant to the May 2008 BOA Statement, a total $416,702.31 was withdrawn from the IOLA account, of which $413,027.31 was directly from the $512,762.56 Mims received from the proceeds of the 2008 LI Capital Mortgage. See Exhibit C.

28.     The ending balance for the May 2008 BOA Statement was $99,988.30.

---

[1] Pursuant to the May 2008 BOA Statement, $367,275.08 in checks were written from the account. In conjunction with these checks, Mims has only produced select checks, not accounting for the total amount of $367,275.08. Of the checks produced by Mims, some are legitimate expenses of Silver Sand, however, a majority of the checks produced are to parties that the Silver Sands Plaintiffs have no connection but one exists between the payees and Mims.

ii.    **The June 2008 IOLA Bank Statement**

29.    During the course of the Supreme Court Action, Mims produced the bank

statement and ledger for the BOA Mims IOLA Account for the Month of June 2008 (the "June

2008 BOA Statement"). Annexed hereto as Exhibit D is a true and correct copy of the June 2008

BOA Statement

30.    Pursuant to the June 2008 BOA Statement, the beginning balance was

$99,988.30, representing the remaining balance from the wire from the 2008 LI Capital

Mortgage. See Exhibit D.

31.    Pursuant to the June 2008 BOA Statement, the following cash withdrawals were

made:

| | DATE | AMOUNT OF WITHDRAWAL |
|---|---|---|
| 1. | June 2, 2008 | $3,000.00 |
| 2. | June 2, 2008 | $500.00 |
| 3. | June 6, 2008 | $300.00 |
| 4. | June 10, 2008 | $1,188.00 |
| 5. | June 18, 2008 | $1,000.00 |
| 6. | June 20, 2008 | $1,500.00 |
| 7. | June 23, 2008 | $5,000.00 |
| 8. | June 27,2008 | $4,500.00 |
| TOTAL | | $16,988.00 |

See Exhibit D.

32.    The ending balance for the June 2008 BOA Statement was $81,048.21[2].

iii.    **The July 2008 IOLA Bank Statement**

33.    During the course of the Supreme Court Action, Mims produced the bank

statement and ledger for the BOA Mims IOLA Account for the Month of July 2008 (the "July

---

[2] Pursuant to the June 2008 BOA Statement, a total of only $3,047.91 additional funds were deposited in the account.

2008 BOA Statement"). Annexed hereto as Exhibit E is a true and correct copy of the July 2008 BOA Statement.

34.    Pursuant to the July 2008 BOA Statement, there were no credits or deposits in the account. See Exhibit E.

35.    Pursuant to the July 2008 BOA Statement, the beginning balance was $81,048.21. See Exhibit E.

36.    Pursuant to the July 2008 BOA Statement, the following cash withdrawals were made:

|  | DATE | AMOUNT OF WITHDRAWAL |
|---|---|---|
| 1. | July 3, 2008 | $9,500.00 |
| 2. | July 29, 2008 | $6,000.00 |
| TOTAL |  | $15,500.00 |

See Exhibit E[3].

37.    Pursuant to the July 2008 BOA Statement, a total $28,048.21 was withdrawn from the IOLA account. See Exhibit E.

38.    The ending balance for the July 2008 BOA Statement was $53,000.00.

### iv.    The August IOLA Bank Statement

39.    During the course of the Supreme Court Action, Mims produced the bank statement and ledger for the for the BOA Mims IOLA Account for the Month of August 2008 (the "August 2008 BOA Statement"). Annexed hereto as Exhibit F is a true and correct copy of the August 2008 BOA Statement.

---

[3] Pursuant to the July 2008 BOA Statement, $12,548.21 in checks or other withdrawals were written or made from the account. A cashier's check in the amount of $2,000.00 was produced. The payee of which is an individual unknown to the Silver Sands Plaintiff.

40.    Pursuant to the August 2008 BOA Statement, the beginning balance was

$53,000.00, representing the remaining balance from the wire from the 2008 LI Capital

Mortgage. See Exhibit F.

41.    Pursuant to the August 2008 BOA Statement, the following cash withdrawals

were made:

|  | DATE | AMOUNT OF WITHDRAWAL |
|---|---|---|
| 1. | August 11, 2008 | $5,500.00 |
| 2. | August 11, 2008 | $300.00 |
| 3. | August 21, 2008 | $2,500.00 |
| 4. | August 26, 2008 | $1,000.00 |
| TOTAL |  | $9,300.00 |

See Exhibit F.

42.    The ending balance for the August 2008 BOA Statement was $46,895.82[4]

### v.    The September 2008 IOLA Bank Statement

43.    During the course of the Supreme Court Action, Mims produced the bank

statement and ledger for the BOA Mims IOLA Account for the Month of September 2008 (the

"September 2008 BOA Statement"). Annexed hereto as Exhibit G is a true and correct copy of

the September 2008 BOA Statement.

44.    Pursuant to the September 2008 BOA Statement, there were no credits or deposits

in the account. See Exhibit G.

45.    Pursuant to the September 2008 BOA Statement, the beginning balance was

$46,895.82. See Exhibit G.

---

[4] Pursuant to the August 2008 BOA Statement, a total of only $3,047.91 additional funds were deposited in the account. In addition, there was one check or other withdrawal for $1,000.00 that remains unaccounted for as Mims did not provide any evidence thereof.

46.    Pursuant to the September 2008 BOA Statement, the following cash withdrawals

were made:

|  | DATE | AMOUNT OF WITHDRAWAL |
|---|---|---|
| 1. | September 2, 2008 | $6,800.00 |
| 2. | September 5, 2008 | $5,000.00 |
| 3. | September 8, 2008 | $5,000.00 |
| 4. | September 9, 2008 | $8,000.00 |
| 5. | September 9, 2008 | $1,000.00 |
| 6. | September 15, 2008 | $85.00 |
| TOTAL | | $25,885.00 |

See Exhibit G[5].

47.    Pursuant to the September 2008 BOA Statement, a total $46,885.00 was

withdrawn from the IOLA account. See Exhibit G.

48.    The ending balance for the September 2008 BOA Statement was $10.82.

**C.    No Further Document Production from Mims**

49.    It is presumed, as the entire IOLA account had been depleted, that Mims

purposely did not produce any further bank statements.

---

[5] Pursuant to the September 2008 BOA Statement, $21,000.00 in checks, withdrawals, or other transfers were written or made from the account. The Silver Sands Plaintiffs acknowledge receipt of $20,000.00 of these funds.

## II.    The November 13, 2008 Mortgage

50.    On or about November 13, 2008, Mims arranged a mortgage between Silver Sands, as mortgagee, and Phillip Solomon, as mortgagor (the "2008 Solomon Mortgage").

51.    The principal amount of the 2008 Solomon Mortgage was 200,000.00.

### A.    <u>Closing Documentation</u>

52.    At no point in the discovery phase of the Supreme Court Litigation did any party produce any closing documents, i.e. closing statement or disbursement sheet, in connection with the 2008 Solomon Mortgage.

53.    The undersigned counsel went to Mims' office in December 2012 and requested any documentation with regard to the 2008 Solomon Mortgage.

54.    Mims failed to produce any documents.

55.    In addition, during the pendency of the litigation, Mims has failed to produce any documentation in connection with the 2008 Solomon Mortgage.

### B.    <u>The Mims Check</u>

56.    The only documentation obtained or produced through discovery in connection with the 2008 Solomon Mortgage was a check in the amount of $123,179.23 (the "2008 Solomon Check"). Annexed hereto as Exhibit H is a true and correct copy of the 2008 Solomon Check.

57.    Pursuant to the 2008 Solomon Check, the payee was designated as "Jerry Mims Esq as attorney." See Exhibit H.

58.    In addition, pursuant to the Solomon Check, the subject line reads "Part of proceeds – Solomon –w- Silver Sands. See Exhibit H.

59.    The Solomon Check was produced by Gerald L. Lotto, Esq., the attorney for Somer Estrin, Esq., (Defendant in the Supreme Court Action) Phillip Solomon's attorney for the closing of the 2008 Solomon Mortgage.

### C.    No Document Production from Mims

60.    Unlike the 2008 LI Capital Mortgage, no documents in connection to the 2008 Solomon Mortgage were produced by Mims.

61.    Mims never produced any statement from any account where this check was deposited allegedly for Silver Sands as it was demarcated to Mims as attorney for Silver Sands.

62.    Mims has also never produced any statement or evidence of how this money was distributed.

### III.    The June 24, 2009 Mortgage

63.    On or about June 24, 2009, Mims arranged a second mortgage and security agreement for Burden and Jurzenia, as mortgagors, with LI Capital, as mortgagee (the "2009 LI Capital Mortgage").

64.    The principal amount of the 2009 LI Capital Mortgage was $900,000.00.

### A.    The 2009 LI Capital Mortgage Closing Statement

65.    Pursuant to the closing statement for the 2009 LI Capital Mortgage, distribution in the form of an escrow check in the amount of $135,000.00 of the proceeds was made to Mims. Annexed hereto as Exhibit I is a true and correct copy of the 2009 LI Capital Mortgage Closing Statement.

66.    The Escrow Check was provided to Mims from Certilman, Balin, Adler, & Hyman, LLP, as attorneys for LI Capital for the closing of the 2009 LI Capital Mortgage. Annexed hereto as Exhibit J is a true and correct copy of the 2009 LI Capital Escrow Check.

### B.    No Document Production from Mims

67.    Unlike the 2008 LI Capital Mortgage, no documents in connection to the 2009 LI Capital Mortgage were produced by Mims.

68.    Mims never produced any statement from any account where this check was deposited allegedly for the mortgagors as it was demarcated as an escrow check.

69.    Mims has also never produced any statement or evidence of how this money was distributed.

12

## IV.    The December 15, 2009 Mortgage

70.    On or about December 15, 2009, Mims arranged a mortgage between Burden and

Walter, as mortgagors, and Phillip Solomon and Rosemary Solomon, as mortgagees (the "2009

Solomon Mortgage").

71.    The principal amount of the 2009 Solomon Mortgage was $550,000.00.

### A.    Closing Documentation

72.    The undersigned counsel went to Mims' office in December 2012 and requested

any documentation with regard to the 2009 Solomon Mortgage.

73.    Mims failed to produce any documents.

74.    In addition, during the pendency of the litigation, Mims has failed to produce and

documentation in connection with the 2008 Solomon Mortgage.

75.    The only documentation with regard to the 2009 Solomon Mortgage was

produced by Mortgagees and/or their counsel.

### B.    The Closing Statement

76.    Pursuant to the "Loan Proceeds Sheet" from the 2009 Solomon Mortgage (the

"2009 Solomon Proceed Distribution"), Mims received a total of $76,000.00 from the proceeds.

Annexed hereto as Exhibit K is true and correct copy of the 2009 Solomon Proceed Distribution.

77.    Mims received two checks, one in the amount of $6,000.00 to "Jerry M. Mims,"

and a second check in the amount of $70,000.00 to "Jerry M. Mims As Atty." See Exhibit K.

78.    As the first check designates the payee as Mims individually, it is assumed that

the amount of $6,000.00 was a legal fee[6] taken by Mims. See Exhibit K.

---

[6] Mortgagors never authorized a legal fee to be taken from the proceeds of the Mortgage.

### C.    The Mims Check

79.    The second check, however, designates the payee as Mims, as attorney (the "2009 Solomon Attorney Check"), therefore those proceeds in the amount of $70,000.00 should have been distributed to mortgagors. Annexed hereto as Exhibit L is a true and correct copy of the 2009 Solomon Attorney Check.

80.    In addition, pursuant to the 2009 Solomon Attorney Check, the subject line reads Solomon –w- Silver Sands. See Exhibit L.

### D.    No Document Production from Mims

81.    No documents in connection to the 2009 Solomon Mortgage were produced by Mims.

82.    Mims never produced any statement from any account where the 2009 Solomon Attorney Check was deposited allegedly for mortgagors as the payee was Mims, as attorney.

83.    Mims has also never produced any statement or evidence of how these proceeds were distributed.

V.      **The December 29, 2010 Mortgage**

84.     On or about December 29, 2010, Mims arranged a mortgage between Burden and Jurzenia, as mortgagors, and the Gross Family Holdings, LLC and the Wheatley Harbor, LLC, as mortgagees (the "Gross/Wheatley Mortgage").

85.     The principal amount of the Gross/Wheatley Mortgage was $250,000.00.

A.      **Closing Documentation**

86.     The undersigned counsel went to Mims' office in December 2012 and requested any documentation with regard to the Gross/Wheatley Mortgage.

87.     Mims failed to produce any documents.

88.     In addition, during the pendency of the litigation, Mims has failed to produce documentation in connection with the Gross/Wheatley Mortgage.

89.     The only documentation with regard to the Gross/Wheatley Mortgage was produced by Anthony T. Conforti., the attorney who represented the mortgagees.

B.      **The Closing Statement**

90.     A closing statement or proceed distribution form was never produced by any party for the Gross/Wheatley Mortgage.

C.      **The Mims Check**

91.     The only documentation produced with regard to the proceeds or portion thereof of the Gross/Wheatley Mortgage was a check in the amount of $126,226.71 made out to "Jerry M. Mims as Attorney (the "2010 Gross/Wheatley Check). Annexed hereto as Exhibit M is a true and correct copy of the 2010 Gross/Wheatley Check.

92.    The Gross/Wheatley Check, designates the payee as Mims, as attorney, therefore those proceeds in the amount of $126,226.17 should have been distributed to mortgagors. See Exhibit M.

93.    Pursuant to the 2010 Gross/Wheatley Check, the subject line reads "Gross & Wheatley w/Burden & Jurzenia".  See Exhibit M.

94.    The 2010 Gross/Wheatley Check was produced by Conforti.

### D.    No Document Production from Mims

95.    No documents in connection to the Gross/Wheatley Mortgage were produced by Mims.

96.    Mims never produced any statement from any account where the 2010 Gross/Wheatley Check was deposited allegedly for mortgagors as it was designated to Mims, as attorney.

97.    Mims has also never produced any statement or evidence of how these proceeds were distributed.

## VI.    The April 18, 2011 Mortgage

98.    On or about April 18, 2011, Mims arranged a mortgage between Burden, Jurzenia, and Walter, as mortgagors, and Peter and Gail Schembri, as mortgagees (the "Schembri Mortgage").

99.    The principal amount of the Schembri Mortgage was $400,000.00.

### A.    Closing Documentation

100.    The undersigned counsel went to Mims' office in December 2012 and requested any documentation with regard to the Schembri Mortgage.

101.    Mims failed to produce any documents.

102.    In addition, during the pendency of the litigation, Mims has failed to produce and documentation in connection with the Schembri Mortgage.

103.    The only documentation with regard to the Schembri Mortgage was produced by the mortgagees and/or their counsel.

### B.    The Closing Statement

104.    A closing statement or proceed distribution form was never produced by any party for the Schembri Mortgage.

105.    In the Supreme Court Action, document production did contain a satisfaction of the Gross/Family Mortgage as the Schembri Mortgage occurred only four months thereafter.

### C.    The Mims Check

106.    The only documentation produced with regard to the distribution proceeds of the Gross/Wheatley Mortgage were checks.

107.    Similar to the other transactions, a check in the amount of $48,550.00 made out to "Jerry M. Mims as Attorney" (the "Schembri Check). Annexed hereto as Exhibit N is a true and correct copy of the Schembri Check.

108.    The Schembri Check, designates the payee as Mims, as attorney, therefore those proceeds in the amount of $48,550.00 should have been distributed to mortgagors. See Exhibit N.

### D.    No Document Production from Mims

109.    No documents in connection to the Schembri Mortgage were produced by Mims.

110.    Mims never produced any statement from any account where the Schembri Check was deposited allegedly for mortgagors as it was designated to Mims, as attorney.

111.    Mims has also never produced any statement or evidence of how these proceeds were distributed.

## VII.  The June 1, 2011 Mortgage

112.    On or about June 1, 2011, Mims arranged a mortgage for Burden and Walter, as mortgagors, with Richard Olivo ("Olivo"), as mortgagee (the "Olivo Mortgage").

113.    The principal amount of the Olivo Mortgage was $550,000.00.

### A.    The Olivo Mortgage Closing Statement

114.    Pursuant to the closing statement for the Olivo Mortgage, the following distribution of $497,327.71 of the proceeds was made to Mims via check to "IOLA account drawn on Suffolk County National Bank – balance of proceeds" Annexed hereto as Exhibit O is a true and correct copy of the Olivo Mortgage closing statement.

### B.    Relevant Documents Produced By Mims

#### i.    The June 2011 IOLA Bank Statement

115.    During the course of the Supreme Court Action, Mims produced the bank statement, ledger, and selective checks for the month of June 2011 from the Chase Bank account for the Law Office of Jerry M. Mims IOLA Trust Account, 130 Barton Avenue, Patchogue, New York 11772-1402 (the "June 2011 IOLA Statement"). Annexed hereto as Exhibit P is a true and correct copy of the June 2011 IOLA Statement and selective checks.

116.    Pursuant to the June 2011 IOLA Statement, a deposit in the amount of $497,327.72 was received on June 1, 2011. See Exhibit P.

117.    The amount of the deposit received by Mims is exactly the amount of the disbursement as demarcated on the Olivo Closing Statement[7]. See Exhibits O and P.

118.    Pursuant to the June 2011 IOLA Statement, the beginning balance was only $377.18 prior to the 497,327.71 deposit. See Exhibit P.

---

[7] In addition, only $1,137.70 (through other deposits) entered the account during the month of June 2011

119.    Pursuant to the June 2011 IOLA Statement, the following withdrawals[8] were

made with regard to the Olivo Mortgage:

|   | DATE | AMOUNT OF WITHDRAWAL/PAYMENT | Mims Notation |
|---|------|------------------------------|---------------|
| 1. | June 8, 2011 | $15,000.00 | Anthony[9] |
| 2. | June 2, 2011 | $16,500.00 | PM Advisory[10] |
| 3. | June 2, 2011 | $6,588.97 | Taxes |
| 4. | June 2, 2011 | $3,719.58 | Taxes |
| 5. | June 2, 2011 | $10,308.53 | Taxes |
| 6. | June 2, 2011 | $1,339.06 | Taxes |
| 7. | June 2, 2011 | $1,264.66 | Taxes |
| 8. | June 2, 2011 | $3,000.00 | Five Star[11] |
| 9. | June , 2011 | $800.00 | Land Surveyor |
| 10. | June 2, 2011 | $16,500.00 | Anthony Gallo[12] |
| 11. | June 2, 2011 | $7,500.00 | me[13] |
| TOTAL | | $82,520.80 | |

See Exhibit P.

120.    Pursuant to the June 2011 IOLA Statement, a total $102,231.90 was withdrawn

from the IOLA account in addition to a wire withdrawal of $395,291.72. See Exhibit P.

121.    The wire withdrawal of $395,291.72 corresponds with a forbearance payment

Mims arranged to be paid to LI Capital to stop a foreclosure of the 2008 and 2009 LI Capital

Mortgages.

122.    Pursuant to the Olivo Closing Statement, $102,231.90 was withdrawn from the

IOLA Account.

---

[8] Mortgagors neither had knowledge of these withdrawals nor authorized them.

[9] "Anthony" refers to Anthony Galeotafiore, a broker that none of the mortgagors were aware was involved in the Olivo mortgage, however, upon information and belief received proceeds in the form of brokers fees from every mortgage. Mortgagors did not know an Anthony Galeotafiore and in addition, an alleged brokerage agreement between the mortgagors and the Anthony Galeotafiore has never been produced.

[10] "PM Advisory", specifically Anthony Lopicollo, was the broker for mortgagee.

[11] "Five Star" refers to Five Star Insurance company.

[12] "Anthony Gallo" is an A/K/A for Anthony Galeotafiore. The reason that Anthony Galeotafiore received two payments is unknown as the first amount of $15,000.00 appears to be unrelated any alleged involvement on the Olivo Mortgage. Coincidentally, the $16,500.00 is the exact amount received by the other broker and represents exactly three points on the Olivo Mortgage.

[13] "me" appears to refer to Mims. There appears no authorization in the Olivo Closing Statement or any other documentary evidence that authorized the withdrawal of an attorneys fee.

123.    Assuming that that the checks as listed above were legitimately drawn, a fact not conceded and subject to the adjudication of the Supreme Court Action, then there remains $19,711.90 of proceeds that were not distributed to mortgagors.

124.    Pursuant to the June 2011 IOLA Statement, the following withdrawals were made with regard to the Olivo Mortgage, however, unlike the related checks produced by Mims, checks for these withdrawals were not produced:

|  | DATE | AMOUNT OF WITHDRAWAL/PAYMENT |
|---|---|---|
| 1. | June 8, 2011 | $59.76 |
| 2. | June 2, 2011 | $3,500.00 |
| 3. | June 3, 2011 | $450.00 |
| 4. | June 1, 2011 | $150.00 |
| 5. | June 2, 2011 | $2,000.00 |
| 6. | June 8, 2011 | $1,750.00 |
| 7. | June 7, 2011 | $395.00 |
| 8. | June 6, 2011 | $200.00 |
| 9. | June 6, 2011 | $500.00 |
| 10. | June 17, 2011 | $89.64 |
| 11. | June 7, 2011 | $500.00 |
| 12. | June 8, 2011 | $1,200.00 |
| 13. | June 8, 2011 | $1,500.00 |
| 14. | June 13, 2011 | $500.00 |
| 15. | June 13, 2011 | $500.00 |
| 16. | June 13, 2011 | $600.00 |
| 17. | June 22, 2011 | $89.64 |
| 18. | June 14, 1011 | $400.00 |
| 19. | June 15, 2011 | $300.00 |
| 20. | June 16, 2011 | $500.00 |
| 21. | June 17, 2011 | $200.00 |
| 22. | June 16, 2011 | $150.00 |
| 23. | June 20, 2011 | $500.00 |
| 24. | June 21, 2011 | $550.00 |
| 25. | June 17, 2011 | $350.00 |
| 26. | June 28, 2011 | $62.06 |
| 27. | June 23, 2011 | $45.00 |
| 28. | June 22, 2011 | $250.00 |
| 29. | June 22, 2011 | $300.00 |
| 30. | June 24, 2011 | $200.00 |
| 31. | June 28, 2011 | $120.00 |

| 32. | June 28, 2011 | $150.00 |
| 33. | June 29, 2011 | $450.00 |
| 34. | June 30, 2011 | $1,200.00 |
| TOTAL | | $19,711.90 |

See Exhibit P.

125.    In addition, there was a $500.00 withdrawal in cash from the account on June 4,

2011.

126.    In total, $19,711.90 of proceeds remains unaccounted.

127.    The ending balance for the June 2011 IOA Statement was $812.97.

## CONCLUSION

### I.     Total Funds and Assets Missing

128.    Pursuant to the above, the following constitutes the funds and proceeds from the mortgages, known and based on Mims' own records, to be held and retained by Mims (without any contrary documentary evidence):

|    | MORTGAGE | FUNDS  RETAINED BY MIMS OR MISSING |
|----|----------|-----------------------------------|
| 1. | 2008 LI Capital Mortgage | $113,425.23 |
| 2. | 2008 Solomon Mortgage | $123,179.23 |
| 3. | 2009 LI Capital Mortgage | $135,000.00 |
| 4. | 2009 Solomon Mortgage | $70,000.00 |
| 5. | Gross/Wheatley Mortgage | $126,226.17 |
| 6. | Schembri Mortgage | $48,550.00 |
| 7. | Olivo Mortgage | $19,711.90 |
|    | TOTAL | $636,092.53[14] |

### A.     Additional Legal Fees Paid Mims by the Silver Sands

129.    Inexplicably, Mims collected attorneys' fees on the mortgage transactions in the known aggregate amount of $13,500.00.

130.    However, over the course of 3 years allegedly representing the Silver Sands Plaintiffs, Mims was paid a total of $155,000.00[15] in legal fees as demanded though wires and direct deposits to his bank accounts (upon information and belief, both escrow and personal).

### B.     The Silver Sands Plaintiffs' Need for Discovery

131.    As illustrated throughout this submission, Mims has failed to produce documentary evidence with regard to the missing funds and proceeds.

---

[14] The figure of $636,092.53 is not inclusive of the other disbursements through checks or other means for which Mims failed to produce any documentation or evidence thereof.  For example, while non-cash withdrawals of $367,257.08 were drawn from the BOA Mims IOLA Account in May 2008, only approximately $200,000.00 of the withdrawals covered legitimate expenses of the Silver Sands Plaintiffs.  Therefore, as approximately $136,000.00 of withdrawals remains unaccounted for, that amount could be added to the total of funds retained by Mims raising the amount to approximately $775,000.00.

[15] All documentation of these legal fee payments will be produced upon request of the Court.

132.    The Silver Sands Plaintiffs, if enabled to continue discovery in the Supreme Court Action, will be able to obtain documentation from Mims, as well as testimony, including but not limited to all of the missing bank statements, checks, and more significantly tax returns as further evidence or indicia of funds that were maintained and declared to the IRS.

133.    The Silver Sands Plaintiffs respectfully request that the Court lift the automatic stay to allow the Supreme Court Action to continue, or in the alternative, if the Court chooses to investigate these missing funds, as they would constitute assets for the secured creditors in the bankruptcy filing, the Court lift the stay to allow prosecution on all other causes of action and claims by the Silver Sands Plaintiffs.

_____
Jaret S. Weber

Dated:  Melville, New York
        December 30, 2015

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re: JERRY MIMS

                                   Debtor(s).

**STIPULATION**
**LIFTING STAY**

Chapter 13
Case No.: 15-73752-LAS

-----------------------------------------------------------------x

    **IT IS HEREBY STIPULATED AND AGREED,** by and between the undersigned

debtor Jerry M. Mims ("Mims") and counsel, Weber Law Group LLP ("WLG") for specific non-

parties hereto, agree as follows:

    WHEREAS, On September 1, 2015, pursuant to the Bankruptcy Code, Mims filed

Petition for Chapter 13 Bankruptcy under Case No. 15-73752-LAS (the "Bankruptcy Petition").

    WHEREAS, Pursuant to the Bankruptcy Petition and pursuant to 11 USCA § 362, there

was an automatic stay placed on the continuation of any legal proceedings involving Mims.

    WHEREAS, Mims is a defendant in an action commenced in Supreme Court, Suffolk

County under Index No. 13490/2013 (the "Supreme Court Action"), in which, there are causes of

actions against Mims by Plaintiffs for monetary damages, as well as cross-claims as against

Mims by multiple co-defendants for monetary damages and indemnification.

    WHEREAS, On October 28, 2015, Mims, orally and pursuant to a Compliance

Conference Order, waived the automatic stay for the limited purposes of participating fully in the

Supreme Court Action. Annexed hereto as Exhibit A is a true and correct copy of the

Compliance Conference Order.



WHEREAS, Thereafter, Mims filed a Notice of Motion to lift stay to participate fully in the Supreme Court action. Annexed hereto as Exhibit B is a true and correct copy of the Motion to lift stay.

WHEREAS, On December 8, 2015, the Motion's return date, both Mims and Weber appeared before the Court to request the lifting of the stay.

WHEREAS, The Court ordered that a stipulation, by and between Mims and Weber, requesting such relief, be submitted and filed for consideration by the Court.

NOW THEREFORE, Mims and Weber, pursuant to the Orders of this Court,

1.  Mims and Weber submit and file this stipulation to the Court requesting and agreeing to the lifting of the stay pursuant to 11 USCA § 362 for the purposes of allowing Mims to fully participate and litigate any and all claims alleged and any related claim as may be adjudicated throughout the Supreme Court Action by Plaintiffs or any co-defendant as against Mims in the Supreme Court Action.

2.  Facsimile signatures herein shall be as binding as original signatures and may be provided to the Court with the same effect as if the original had been filed.

Dated:  Melville, New York
        December     , 2015

WEBER LAW GROUP

By: _____
    Jaret s. Weber, Esq.
    290 Broadhollow Road, Suite 200E
    Melville, New York 11747-4818
    Tel. (631) 549-2000
    Fax. (631) 549-2015

By: _____
    Jerry Marvin Mims
    130 Barton Avenue
    Patchogue, New York 11772

**EXHIBIT B**

May 8, 2008

Long Island Capital Management Corp.
45 Moores Hill Road
Oyster Bay, New York 11771

Certilman Balin Adler & Hyman, LLP
90 Merrick Avenue – 9th Floor
East Meadow, New York 11554

Re:     $750,000.00 Mortgage Loan to Jean Jurzenia Burden a/k/a
Jean J. Burden a/k/a Jean Burden a/k/a Jean Jurzenia
Keefe and Edward Jurzenia a/k/a Edward P. Zurzenia,
from Long Island Capital Management Corp.

Ladies and Gentlemen:

Kindly disburse proceeds of the above-referenced loan, as follows:

1)  Bank Check to                                                          $
2)  Escrow Check to Long Island Capital Management Corp.   $ 157,500.00
3)  Escrow Check to AJG Capital Group                             $  22,500.00
4)  Escrow Check to Certilman Balin Adler & Hyman, LLP     $   9,000.00
5)  Escrow Check to Elizabeth Reis                                 $~~1400~~ ~~300.00~~
6)  Escrow Check to Excel Abstract, Inc.                          $ 47,837.44
7)  Escrow Check to                                                      237,237.44
8)  Wire transfer to IOLA account of the Law Office of
    Jerry M. Mims PC  Bank of America wire
    # 0026000 9593  Account # ~~████~~ 2813          $ 512,762.56
    Main St Patchogue
    Law offices of Jerry M. Mims              =  $ 750,000.00
    IOLA Account

Very truly yours,

_____
Jean Jurzenia Burden

_____
Edward Jurzenia by Jean Burden
his attorney in fact

Sworn to before me
this 8th day of May 2008

_____
Elizabeth R. Reis
Notary Public, State of New York
No. 01RE6082633
Qualified in Suffolk County
Expiration Date 11/11/___

2048271.1

EXHIBIT C

H

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

Page 1 of 4
Statement Period
05/01/08 through 05/31/08
E00  P PC   0C  61                    030
Enclosures 12
Account Number █████████ 2819

IlulIuulIlulIluulululululuIlUuulIluulululululululI
02487 001 SCM999 I  54 0

JERRY M MIMS ATTY
IOLA FUND
192 W MAIN ST
PATCHOGUE NY 11772-3004

Our free Online Banking service allows you to check balances, track account activity, pay bills and more.
**With Online Banking you can also view up to 18 months of this statement online.**
Enroll at www.bankofamerica.com/smallbusiness.

**Customer Service Information**
**www.bankofamerica.com**

For additional information or service, you may call          Or you may write to:
1-888-BUSINESS (1-888-287-4637)                            Bank of America, N.A.
                                                           P.O. Box 25118
                                                           Tampa, FL 33622-5118

---

## Do you still have money in a previous employer's 401(k) plan?

If you still have retirement savings with a former employer, or in multiple IRAs, consolidate those assets
into a single Rollover IRA from Bank of America, N.A. It may help you simplify the tracking and
management of your retirement savings and preserve tax-deferred growth benefits. To learn more, stop
by a local banking center or visit www.bankofamerica.com/myIRA.

H

JERRY M MIMS ATTY
IOLA FUND

Page 2 of 4
Statement Period
05/01/08 through 05/31/08
E00 P P'C  0C 61
Enclosures 12
Account Number        2813

## Deposit Accounts

## Public Service Trust Account

### JERRY M MIMS ATTY  IOLA FUND

### Your Account at a Glance

| | | | |
|---|---|---|---|
| Account Number | 2813 | Statement Beginning Balance | $15.14 |
| Statement Period | 05/01/08 through 05/31/08 | Amount of Deposits/Credits | $516,675.47 |
| Number of Deposits/Credits | 5 | Amount of Withdrawals/Debits | $416,702.31 |
| Number of Withdrawals/Debits | 27 | Statement Ending Balance | $99,988.30 |
| Number of Days in Cycle | 31 | Average Ledger Balance | $114,887.15 |
| | | Service Charge | $0.00 |

### Deposits and Credits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 05/02 | 2,000.00 | Counter Credit | 813004570291739 |
| 05/06 | 165.00 | Counter Credit | 813005770434606 |
| 05/07 | 1,547.91 | Counter Credit | 813004170518086 |
| 05/12 | 512,762.56 | Wire Type:Wire IN Date: 080512 Time:1711 Et Trn:2008051200245504 Seq:Nf431923/001134 Orig:Certilman Balin Adler & H ID:3124008747 Snd Bk:Capital One, N.A. ID:021407912 | 903705120245504 |
| 05/14 | 200.00 | Counter Credit | 813004470274464 |

### Withdrawals and Debits

### Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 05/05 | 1,500.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue          #0000041 NY Confirmation# 9819784027 | 957505059939634 |
| 05/06 | 500.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue          #0000041 NY Confirmation# 0082529899 | 957505069957801 |
| 05/07 | 175.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue          #0000041 NY Confirmation# 0178683851 | 957505079949082 |
| 05/08 | 1,500.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue          #0000041 NY Confirmation# 0276404916 | 957505089966595 |
| 05/13 | 113,000.00 | Counter Debit | 813005870636323 |
| 05/13 | 21,000.00 | Counter Debit | 813005870636298 |
| 05/13 | 6,765.00 | Counter Debit | 813005870636296 |
| 05/13 | 3,000.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue          #0000041 NY Confirmation# 0695758949 | 957505139981925 |



JERRY M MIMS ATTY
IOLA FUND

Page 3 of 4
Statement Period
06/01/08 through 05/31/08
E00  P  PC   0C 61                    036
Enclosures 12
Account Number            2813

## Withdrawals and Debits - Continued
### Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 05/14 | 55,352.06 | Counter Debit | 813004470274332 |
| 05/14 | 50,000.00 | Counter Debit | 813004470274463 |
| 05/14 | 20,000.00 | Check #0000000000 From 009999999999 005870636286 | 955205130005662 |
| 05/14 | 3,613.87 | Counter Debit | 813004470274467 |
| 05/14 | 9,500.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue          #0000041 NY Confirmation# 0775508200 | 957505149963091 |
| 05/15 | 20,000.00 | Counter Debit | 813005870123297 |
| 05/15 | 15,000.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue          #0000041 NY Confirmation# 0866221950 | 957505159923295 |
| 05/19 | 20,000.00 | Counter Debit | 813005670955831 |
| 05/19 | 4,600.00 | Counter Debit | 813005670955837 |
| 05/19 | 8,000.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue          #0000041 NY Confirmation# 1037306417 | 957505199929642 |
| 05/20 | 3,454.15 | Counter Debit | 813004370625053 |
| 05/20 | 4,000.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue          #0000041 NY Confirmation# 1310146967 | 957505209931266 |
| 05/21 | 4,490.00 | Counter Debit | 813004170907548 |
| 05/23 | 1,402.23 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue          #0000041 NY Confirmation# 1562378165 | 957505239942764 |
| 05/23 | 500.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue          #0000041 NY Confirmation# 1562279674 | 957505239941194 |
| 05/27 | 40,000.00 | Counter Debit | 813005870026652 |
| 05/27 | 850.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue          #0000041 NY Confirmation# 1909282753 | 957505279902378 |
| 05/29 | 2,000.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue          #0000041 NY Confirmation# 2074501077 | 957505299998579 |
| 05/30 | 1,500.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue          #0000041 NY Confirmation# 2163125799 | 957505309935281 |

### Daily Ledger Balances

| Date | Balance ($) | Date | Balance ($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 05/01 | 15.14 | 05/12 | 512,315.61 | 05/21 | 146,240.53 |
| 05/02 | 2,015.14 | 05/13 | 364,050.61 | 05/23 | 144,338.30 |
| 05/05 | 515.14 | 05/14 | 225,784.68 | 05/27 | 103,488.30 |
| 05/06 | 180.14 | 05/15 | 190,784.68 | 05/29 | 101,488.30 |
| 05/07 | 1,553.05 | 05/19 | 158,184.68 | 05/30 | 99,988.30 |
| 05/08 | 53.05 | 05/20 | 150,730.53 | | |

EXHIBIT D



Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

Page 1 of 4
Statement Period
06/01/08 through 06/30/08
£00 P PC  0C 61          0:
Enclosures 1
Account Number  ⬛⬛⬛⬛ 2313

H

ıllıllıllıllıllıllıllılıllıllıllıllıllıllılıl
                        01487 001 SCH999 I  3  0

JERRY M MIMS ATTY
IOLA FUND
6 E 4TH ST
PATCHOGUE NY 11772-2312

Our free Online Banking service allows you to check balances, track account activity, pay bills and more.
**With Online Banking you can also view up to 18 months of this statement online.**
Enroll at www.bankofamerica.com/smallbusiness.

### Customer Service Information
### www.bankofamerica.com

For additional information or service, you may call:        Or you may write to:
1.888.BUSINESS (1.888.287.4637)                              Bank of America, N.A.
                                                            P.O. Box 25118
                                                            Tampa, FL 33622-5118

---

**Manage Your Accounts with Online Banking Alerts**

Keep track of your account activity automatically and help prevent fees with free Online Banking Alerts. Alerts can help you prevent fees by notifying you when: Your account balance drops below a level that you set, a direct deposit has been posted to your account, or a check you've written has posted. We can deliver your Alerts either by email or text message to your mobile device (check with your service provider for details on specific fees and charges). Visit Online Banking today to learn more.

---

**Museums on Us™ - your weekend getaway for arts and culture.**

As a valued Bank of America customer, you can receive free admission to over 70 museums nationwide the first weekend of every month with Museums on Us™ Just present your Bank of America debit, credit or ATM card, along with your photo ID at participating museums. To learn more and to sign up for monthly email or text reminders visit bankofamerica.com/museums.

H

Page 2 of 4
Statement Period
06/01/08 through 06/30/08
E00  P PC   0C 61
Enclosures 1
Account Number ▬▬▬ 2813

JERRY M MIMS ATTY
IOLA FUND

| Deposit Accounts |
| --- |

## Public Service Trust Account

JERRY M MIMS ATTY  IOLA FUND

### Your Account at a Glance

| Account Number | ▬▬ 2813 | Statement Beginning Balance | $99,988.30 |
| --- | --- | --- | --- |
| Statement Period | 06/01/08 through 06/30/08 | Amount of Deposits/Credits | $3,047.91 |
| Number of Deposits/Credits | 2 | Amount of Withdrawals/Debits | $21,988.00 |
| Number of Withdrawals/Debits | 9 | Statement Ending Balance | $81,048.21 |
| Number of Days in Cycle | 30 | Average Ledger Balance | $89,090.93 |
| | | Service Charge | $0.00 |

### Deposits and Credits

| Date Posted | Amount ($) | Description | Bank Reference |
| --- | --- | --- | --- |
| 06/18 | 3,000.00 | Counter Credit | 813005670745660 |
| 06/20 | 47.91 | Counter Credit | 813005670376486 |

### Withdrawals and Debits

### Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
| --- | --- | --- | --- |
| 06/02 | 5,000.00 | Counter Debit | 813005870845194 ✓ |
| 06/02 | 3,000.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue      #0000041 NY Confirmation# 2424130613 | 957506029939966 ✓ |
| 06/02 | 500.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue      #0000041 NY Confirmation# 2424212759 | 957506029941288 ✓ |
| 06/06 | 300.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue      #0000041 NY Confirmation# 2775327570 | 957506069905322 ✓ |
| 06/10 | 1,188.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue      #0000041 NY Confirmation# 3120270919 | 957506109999448 ✓ |
| 06/18 | 1,000.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue      #0000041 NY Confirmation# 3802516271 | 957506189992225 ✓ |
| 06/20 | 1,500.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue      #0000041 NY Confirmation# 3978833599 | 957506209988001 ✓ |
| 06/23 | 5,000.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue      #0000041 NY Confirmation# 4233240307 | 957506239970712 ✓ |



JERRY M. MIMS ATTY
IOLA FUND

H

Page 3 of 4
Statement Period
06/01/08 through 06/30/08
E00  P  PC   0C 61                    03
Enclosures 1
Account Number ●●●●2813

### Withdrawals and Debits - Continued
### Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 06/27 | 4,500.00 | NY Tlr cash withdrawal from Chk 2813<br>Banking Ctr Patchogue          #0000041 NY<br>Confirmation# 4581789224 | 957506279971383 |

### Daily Ledger Balances

| Date | Balance ($) | Date | Balance ($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 06/01 | 99,988.30 | 06/10 | 90,000.30 | 06/23 | 85,548.21 |
| 06/02 | 91,488.30 | 06/18 | 92,000.30 | 06/27 | 81,048.21 |
| 06/06 | 91,188.30 | 06/20 | 90,548.21 | | |

## How To Balance Your Bank of America Account

**FIRST, start with your Account Register/Checkbook:**

1. List your Account Register/Checkbook Balance here ........................................................................................... $ _____

2. Subtract any service charges or other deductions not previously recorded that are listed on this statement ................. $ _____

3. Add any credits not previously recorded that are listed on this statement (for example interest) ................................ $ _____

4. This is your NEW ACCOUNT REGISTER BALANCE .............................................................................................. $ _____

**NOW, with your Account Statement:**

1. List your Statement Ending Balance here ............................................................................................................ $ _____

2. Add any deposits not shown on this statement .................................................................................................... $ _____

_____

**SUBTOTAL** ....................... $ _____

3. List and total all outstanding checks, ATM, Check Card and other electronic withdrawals

| Checks, ATM, Check Card, Electronic Withdrawals | | Checks, ATM, Check Card, Electronic Withdrawals | | Checks, ATM, Check Card, Electronic Withdrawals | |
|---|---|---|---|---|---|
| Date/Check # | Amount | Date/Check # | Amount | Date/Check # | Amount |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

4. TOTAL OF OUTSTANDING CHECKS, ATM, Check Card and other electronic withdrawals ........................... $ _____

5. Subtract total outstanding checks, ATM, Check Card and other electronic withdrawals from Subtotal
   This Balance should match your new Account Register Balance .............................................................. $ _____

Upon receipt of your statement, differences, if any, should be reported to the bank promptly in writing and in accordance with provisions in your deposit agreement.

### IMPORTANT INFORMATION FOR BANK DEPOSIT ACCOUNTS

**Change of Address.** Please call us at the telephone number listed on the front of this statement to tell us about a change of address.

**Deposit Agreement.** When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule, which contain the current version of the terms and conditions of your account relationship, may be obtained at our banking centers.

**Electronic Transfers.** In case of errors or questions about your electronic transfers
If you think your statement or receipt is wrong or if you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

* Tell us your name and account number.
* Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
* Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting Other Problems.** You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or unauthorized transactions within the time periods specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you for, and you agree not to make a claim against us for the problems or unauthorized transactions.

**Direct Deposits.** If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us at the telephone number listed on the front of this statement to find out if the deposit was made as scheduled.

Bank of America, N.A. Member FDIC and    Equal Housing Lender

EXHIBIT E

H

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

Page 1 of 3
Statement Period
07/01/08 through 07/31/08
E00 P PC  OC 61        037
Enclosures 4
Account Number        2813

01487 001 SCH999 I  34 0

JERRY M MIMS ATTY
IOLA FUND
6 E 4TH ST
PATCHOGUE NY 11772-2312

Our free Online Banking service allows you to check balances, track account activity, pay bills and more.
**With Online Banking you can also view up to 18 months of this statement online.**
Enroll at www.bankofamerica.com/smallbusiness.

## Customer Service Information
## www.bankofamerica.com

For additional information or service, you may call:        Or contact us by mail:
1.888.BUSINESS (1.888.287.4637)        Bank of America, N.A.
        P.O. Box 25118
        Tampa, FL 33622-5118

---

### Museums on Us® - your weekend getaway for arts and culture.

As a valued Bank of America customer, you can receive free admission to over 70 museums nationwide the first weekend of every month with Museums on Us®. Just present your Bank of America check, credit or ATM card, along with your photo ID at participating museums. To learn more and to sign up for monthly email or text reminders visit bankofamerica.com/artsonus.

---

### The Small Business Online Community is a FREE and open forum for business owners.

Ask questions and receive advice from peers and industry experts.
Network with other business owners.
Promote your business for FREE.
To join today, visit www.smallbusinessonlinecommunity.com.

H

JERRY M MIMS ATTY
IOLA FUND

Page 2 of 3
Statement Period
07/01/08 through 07/31/08
E00 P PC   0C 61
Enclosures 4
Account Number          2813

## Deposit Accounts

## Public Service Trust Account

### JERRY M MIMS ATTY  IOLA FUND

#### Your Account at a Glance

| | | | |
|---|---|---|---|
| Account Number | 2813 | Statement Beginning Balance | $81,048.21 |
| Statement Period | 07/01/08 through 07/31/08 | Amount of Deposits/Credits | $0.00 |
| Number of Deposits/Credits | 0 | Amount of Withdrawals/Debits | $28,048.21 |
| Number of Withdrawals/Debits | 6 | Statement Ending Balance | $53,000.00 |
| Number of Days in Cycle | 31 | Average Ledger Balance | $64,622.23 |
| | | Service Charge | $0.00 |

#### Withdrawals and Debits

#### Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 07/03 | 9,500.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue          #0000041 NY Confirmation# 5106335133 | 957507039990618 |
| 07/07 | 1,548.21 | Counter Debit | 813004670879408 |
| 07/11 | 3,000.00 | Counter Debit | 813004770555852 |
| 07/14 | 6,000.00 | Counter Debit | 813004970522846 |
| 07/29 | 2,000.00 | Counter Debit | 813004470846011 |
| 07/29 | 6,000.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue          #0000041 NY Confirmation# 7344023513 | 957507299979805 |

#### Daily Ledger Balances

| Date | Balance ($) | Date | Balance ($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 07/01 | 81,048.21 | 07/07 | 70,000.00 | 07/14 | 61,000.00 |
| 07/03 | 71,548.21 | 07/11 | 67,000.00 | 07/29 | 53,000.00 |

**EXHIBIT F**

JERRY M MIMS ATTY
IOLA FUND

Page 2 of 3
Statement Period
08/01/08 through 08/31/08
E90 P FC  0C 61
Enclosures 1
Account Number          2813

## Deposit Accounts

## Public Service Trust Account

### JERRY M MIMS ATTY  IOLA FUND

### Your Account at a Glance

| | | | |
|---|---|---|---|
| Account Number | 2813 | Statement Beginning Balance | $53,000.00 |
| Statement Period | 08/01/08 through 08/31/08 | Amount of Deposits/Credits | $4,195.82 |
| Number of Deposits/Credits | 2 | Amount of Withdrawals/Debits | $10,300.00 |
| Number of Withdrawals/Debits | 5 | Statement Ending Balance | $46,895.82 |
| Number of Days in Cycle | 31 | Average Ledger Balance | $49,832.65 |
| | | Service Charge | $0.00 |

### Deposits and Credits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 08/11 | 4,000.00 | Counter Credit | 813004370881839 |
| 08/11 | 195.82 | Counter Credit | 813004470928701 |

### Withdrawals and Debits

### Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 08/01 | 1,000.00 | Counter Debit | 813004170845501 |
| 08/11 | 5,500.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue         #0000041 NY Confirmation# 8467167363 | 957508119989491 ✓ |
| 08/11 | 300.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue         #0000041 NY Confirmation# 8295684634 | 957508119932804 |
| 08/21 | 2,500.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue         #0000041 NY Confirmation# 9342564030 | 957508219991292 |
| 08/26 | 1,000.00 | NY Tlr cash withdrawal from Chk 2813 Banking Ctr Patchogue         #0000041 NY Confirmation# 9767444068 | 957508269920373 |

### Daily Ledger Balances

| Date | Balance ($) | Date | Balance ($) |
|---|---|---|---|
| 08/01 | 52,000.00 | 08/21 | 47,895.82 |
| 08/11 | 50,395.82 | 08/26 | 46,895.82 |



098

## How To Balance Your Bank of America Account

**FIRST, start with your Account Register/Checkbook:**

1. List your Account Register/Checkbook Balance here ......................................................... $ _____

2. Subtract any service charges or other deductions not previously recorded that are listed on this statement ................ $ _____

3. Add any credits not previously recorded that are listed on this statement (for example interest) ............................. $ _____

4. This is your NEW ACCOUNT REGISTER BALANCE ................................................................... $ _____

**NOW, with your Account Statement:**

1. List your Statement Ending Balance here ...................................................................... $ _____

2. Add any deposits not shown on this statement .................................................................. $ _____

**SUBTOTAL** ..................... $ _____

3. List and total all outstanding checks, ATM, Check Card and other electronic withdrawals

| Checks, ATM, Check Card, Electronic Withdrawals | | Checks, ATM, Check Card, Electronic Withdrawals | | Checks, ATM, Check Card, Electronic Withdrawals | |
|---|---|---|---|---|---|
| Date/Check # | Amount | Date/Check # | Amount | Date/Check # | Amount |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

4. TOTAL OF OUTSTANDING CHECKS, ATM, Check Card and other electronic withdrawals ................. $ _____

5. Subtract total outstanding checks, ATM, Check Card and other electronic withdrawals from Subtotal
   This Balance should match your new Account Register Balance ................................................ $ _____

Upon receipt of your statement, differences, if any, should be reported to the bank promptly in writing and in accordance with provisions in your deposit agreement

## IMPORTANT INFORMATION FOR BANK DEPOSIT ACCOUNTS

**Change of Address.** Please call us at the telephone number listed on the front of this statement to tell us about a change of address.

**Deposit Agreement.** When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule, which contain the current version of the terms and conditions of your account relationship, may be obtained at our banking centers.

**Electronic Transfers:** In case of errors or questions about your electronic transfers.
If you think your statement or receipt is wrong or if you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

* Tell us your name and account number.
* Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
* Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer) for electronic transfers occurring the first 30 days after the first deposit is made to your account) to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting Other Problems.** You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or unauthorized transactions within the time periods specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you for, and you agree not to make a claim against us for the problems or unauthorized transactions.

**Direct Deposits.** If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us at the telephone number listed on the front of this statement to find out if the deposit was made as scheduled.

Bank of America, N.A. Member FDIC and  Equal Housing Lender

**EXHIBIT G**

H



Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

Page 1 of 3
Statement Period
09/01/08 through 09/30/08
B00 P PC  0C 6t          0358t
Enclosures 1
Account Number           2813

01487 001 SCH999 I 3 0

JERRY M MIMS ATTY
IOLA FUND
6 E 4TH ST
PATCHOGUE NY 11772-2312

Our free Online Banking service allows you to check balances, track account activity, pay bills and more.
With Online Banking you can also view up to 18 months of this statement online.
Enroll at www.bankofamerica.com/smallbusiness.

## Customer Service Information
### www.bankofamerica.com

For additional information on services, you may call:
1-888-BUSINESS (1-888-287-4637)

Or you may write to:
Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

## Deposit Accounts

## Public Service Trust Account

### JERRY M MIMS ATTY IOLA FUND

#### Your Account at a Glance

| | | |
|---|---|---|
| Account Number              2813 | Statement Beginning Balance | $46,895.82 |
| Statement Period    09/01/08 through 09/30/08 | Amount of Deposits/Credits | $0.00 |
| Number of Deposits/Credits          0 | Amount of Withdrawals/Debits | $46,885.00 |
| Number of Withdrawals/Debits        8 | Statement Ending Balance | $10.82 |
| Number of Days in Cycle           30 | Average Ledger Balance | $10,110.48 |
| | Service Charge | $0.00 |

Page 2 of 3
Statement Period
09/01/08 through 09/30/08
E00 P PC  0C 61
Enclosures 1
Account Number ███ 2813

JERRY M MIMS ATTY
IOLA FUND

## Withdrawals and Debits

### Other Debits

| Date Posted | Amount ($) | Description | Bank Reference |
|---|---|---|---|
| 09/02 | 6,800.00 | NY Tlr cash withdrawal from Chk 2813<br>Banking Ctr Patchogue          #0000041 NY<br>Confirmation# 0372712199 | 957509029952407 ✓ |
| 09/05 | 5,000.00 | NY Tlr cash withdrawal from Chk 2813<br>Banking Ctr Patchogue          #0000041 NY<br>Confirmation# 0633963516 | 957509059963723 ✓ |
| 09/08 | 5,000.00 | NY Tlr cash withdrawal from Chk 2813<br>Banking Ctr Patchogue          #0000041 NY<br>Confirmation# 0717049760 | 957509089969163 ✓ |
| 09/09 | 1,000.00 | Counter Debit | 813004370401558 |
| 09/09 | 20,000.00 | NY Tlr transfer to Chk 2828<br>Banking Ctr Patchogue          #0000041 NY<br>Confirmation# 0972435230 | 957509097516355 |
| 09/09 | 8,000.00 | NY Tlr cash withdrawal from Chk 2813<br>Banking Ctr Patchogue          #0000041 NY<br>Confirmation# 0972854452 | 957509099982839 ✓ |
| 09/09 | 1,000.00 | NY Tlr cash withdrawal from Chk 2813<br>Banking Ctr Patchogue          #0000041 NY<br>Confirmation# 0972927467 | 957509099983481 |
| 09/15 | 85.00 | NY Tlr cash withdrawal from Chk 2813<br>Banking Ctr Patchogue          #0000041 NY<br>Confirmation# 1324389351 | 957509159986459 |

### Daily Ledger Balances

| Date | Balance ($) | Date | Balance ($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 09/01 | 46,895.82 | 09/05 | 35,095.82 | 09/09 | 95.82 |
| 09/02 | 40,095.82 | 09/08 | 30,095.82 | 09/15 | 10.82 |



## How To Balance Your Bank of America Account

**FIRST, start with your Account Register/Checkbook:**

1. List your Account Register/Checkbook Balance here ........................................................ $ _____

2. Subtract any service charges or other deductions not previously recorded that are listed on this statement ........... $ _____

3. Add any credits not previously recorded that are listed on this statement (for example interest) ............. $ _____

4. This is your NEW ACCOUNT REGISTER BALANCE ................... $ _____

**NOW, with your Account Statement:**

1. List your Statement Ending Balance here .......................................... $ _____

2. Add any deposits not shown on this statement ................................. $ _____

_____
_____
_____

**SUBTOTAL** .............................. $ _____

3. List and total all outstanding checks, ATM, Check Card and other electronic withdrawals

| Checks, ATM, Check Card, Electronic Withdrawals | | Checks, ATM, Check Card, Electronic Withdrawals | | Checks, ATM, Check Card, Electronic Withdrawals | |
|---|---|---|---|---|---|
| Date/Check # | Amount | Date/Check # | Amount | Date/Check # | Amount |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

4. TOTAL OF OUTSTANDING CHECKS, ATM, Check Card and other electronic withdrawals ................... $ _____

5. Subtract total outstanding checks, ATM, Check Card and other electronic withdrawals from Subtotal
This Balance should match your new Account Register Balance ...................................... $ _____

Upon receipt of your statement, differences, if any, should be reported to the bank promptly in writing and in accordance with provisions in your deposit agreement.

### IMPORTANT INFORMATION FOR BANK DEPOSIT ACCOUNTS

**Change of Address.** Please call us at the telephone number listed on the front of this statement to tell us about a change of address.

**Deposit Agreement.** When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule, which contain the current version of the terms and conditions of your account relationship, may be obtained at our banking centers.

**Electronic Transfers.** In case of errors or questions about your electronic transfers
If you think your statement or receipt is wrong or if you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

* Tell us your name and account number
* Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
* Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting Other Problems.** You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or unauthorized transactions within the time periods specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you for, and you agree not to make a claim against us for the problems or unauthorized transactions.

**Direct Deposits.** If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us at the telephone number listed on the front of this statement to find out if the deposit was made as scheduled.

Bank of America, N.A. Member FDIC and  Equal Housing Lender

EXHIBIT H



**EXHIBIT I**

June 24, 2009

Long Island Capital Management Corp.
45 Moores Hill Road
Oyster Bay, New York 11771

Certilman Balin Adler & Hyman, LLP
90 Merrick Avenue – 9th Floor
East Meadow, New York 11554

Re:   $1,650,000.00 Consolidated Mortgage Loan to Silver Sands Motel, Inc.,
      Jean J. Burden a/k/a Jean Jurzenia Burden a/k/a Jean J. Keefe a/k/a Jean
      Jurzenia Keefe and Edward P. Jurzenia a/k/a Edward Zurzenia from Long
      Island Capital Management Corp.

Ladies and Gentlemen:

      Kindly disburse proceeds of the above-referenced loan, as follows:

| | | |
|---|---|---:|
| 1) | Deducted from Loan Proceeds by Long Island Capital Management Corp. | $ 361,833.33 |
| 2) | Escrow Check to AJG Capital Group | $ 49,500.00 |
| 3) | Escrow Check to Certilman Balin Adler & Hyman, LLP | $ 15,100.00 |
| 4) | Escrow Check to Philip Solomon | $ 203,188.98 |
| 5) | Escrow Check to Somer Estrin | $ 250.00 |
| 6) | Escrow Check to Sheriff of Suffolk County | $ 19,307.84 |
| 7) | Escrow Check to Patricia Chessman | $ 350.00 |
| 8) | Escrow Check to Brightwaters Abstract, Inc. | $ 30,098.00 |
| 9) | Jean J. Burden | $ 85,371.85 |
| 10) | Escrow Check to Jerry Mims, Esq. | $ 135,000.00 |
| 10) | Previously disbursed on May 9, 2008 | $ 750,000.00 |
| | | $1,650,000.00 |

Very truly yours,
Silver Sands Motel, Inc.

By: _____
      Jean J. Burden, President

_____
Jean J. Burden

_____
Edward P. Jurzenia by J
Jean J. Burden, his attorney in fact

Accepted & Agreed to:

_____
Jerry M. Mims, Esq.

2141808.1

**EXHIBIT J**



CERTILMAN, BALIN, ADLER & HYMAN, LLP
ATTORNEY ESCROW ACCOUNT DISBURSEMENT

32874

90 MERRICK AVE.
EAST MEADOW, NY 11554

DATE 06/24/2009

PAY
TO THE
ORDER OF    JERRY MIMS, ESQ.

$ $135,000.00

one hundred thirty-five thousand dollars and zero cents

DOLLARS

Capital One Bank

32874    06272.0008    BURDEN, JEAN

FOR

**EXHIBIT K**

LOAN PROCEEDS SHEET

Date Closed  12/15/09          Disbursement closed  12/21/09

Mortgagor  JEAN J BURDEN          Mortgagee: PHILIP & ROSEMARY SOLOMON
WALTER H BURDEN III

Premises: 1090/1091 COVE CIRCLE GREEN PORT, N.Y.

Amount of Mortgage $  550,000.00

Mortgage Proceeds Drawn as Follows:

Check number  Suffolk Central Bank
              national Bank                    To Whom                    Amount
Bank Check #1074911

#1644                    MARK ROSENBLOOM EsqPLLC        380,000.00
#1643                    AFFIRMATIVE LAND SERVICES       15,893.92
#1645                    S. ESTRIN (LEGAL FEE)            4,750.00
#1646                    SUSAN ESTRIN (CLOSER)             250.00

#1647                    FIVE STAR COVERAGE             12,000.00
#1648                    JERRY M. MIMS                   6,000.00
#1649                    JERRY M. MIMS As Atty          70,000.00

WIRED                    JEAN J. BURDEN                 61,106.08
                         { WALTER H BURDEN III

                              TOTAL                    550,000.00


MORTGAGORS:

EXHIBIT L



**EXHIBIT M**

**ANTHONY T. CONFORTI**
**TRUST ACCOUNT**
140 FELL COURT, SUITE 303
HAUPPAUGE, NY 11788

6428

1-32/210 NY
60307

DATE  12/15/10

PAY
TO THE
ORDER OF    Jerry M. Mims as Attorney                    $  126,226.17

One hundred twenty six thousand two hundred twenty six and 17/100    DOLLARS

**Bank of America**

ACH R/T 021000322

FOR    Gross & Wheatley w/Burden & Jurzenia

12/15/10 Check To
J Mims

EXHIBIT N



**EXHIBIT O**

## CLOSING STATEMENT
### Prepared by:
Sean M. Walter, P.C.
1938 Wading River Manor Road
Post Office Box 852
Wading River, New York 11792
(631) 929-5400

MORTGAGOR:         Walter H. Burden, III and Jean J. Burden, personally and as attorney in fact for Walter H. Burden, III

MORTGAGEE:        Richard D. Olivo ~~S & R Diamond, Inc.~~

PREMISES:           308 Flint Street, Greenport, New York

DATE:                June 1, 2011

LOCATION:          1938 Wading River Manor Road
                      Wading River, New York 11792

PRESENT:           Jean J. Burden, mortgagor
                      Jerry Mims, Esq., representing mortgagor
                      Richard D. Olivo, mortgagee
                      Sean M. Walter, Esq., representing mortgagee
                                , title closer

---

TOTAL MORTGAGE AMOUNT:                  $550,000.00

Money deposited in Sean M. Walter, PC
Attorney Trust Account:

Richard D. Olivo official check #458166
drawn on Astoria Federal Savings dated
in the sum of $550,000.00

*Less:*
Loan Points (3%)         $16,500.00
Sean M. Walter, PC     $  750.00
Total Lending Fees:               -($17,250.00)

Net Funding:                  $532,750.00

*Sean M. Walter, P.C.* – attorney fee paid by
check #       of Sean M, Walter, PC IOLA
account drawn on Suffolk County National
Bank                                                        $ 750.00


*Richard D. Olivo,* mortgagee:
Loan Points fee – 3% =$16,500.00 paid as follows:
1) Check #       of Sean M. Walter, PC IOLA account
drawn on Suffolk County National Bank and payable to
Sean M. Walter, P.C. for attorney fee in the sum of:        $   100.00
2) 1) Check #       of Sean M. Walter, PC IOLA account
drawn on Suffolk County National Bank and payable to
Richard D. Olivo in the sum of:                             $16,400.00
        Total due to Richard D. Olivo, mortgagee:          $16,500.00

*Hamlet Title Agency, Inc.* – title charges
paid by check #         of Sean M. Walter, PC IOLA
account drawn on Suffolk County National Bank               $21,242.03

*Suffolk County Treasurer's Office* – 2009/10 Real
Estate Tax arrears tax redemption in the amount of
$14,180.26 paid by check#      of Sean M. Walter, PC
IOLA account drawn on Suffolk County National Bank          $14,180.26

                                                            52,672.29.

*Walter H. Burden and Jean J. Burden* –
paid by bank check #        of Sean M. Walter, PC
IOLA account drawn on Suffolk County National
Bank – balance of proceeds                                  $497,327.71


TOTAL MORTGAGE LOAN AMOUNT paid out:                        $550.000.00

**EXHIBIT P**

 **CHASE** ◻

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 -9754

June 01, 2011 through June 30, 2011
Account Number: ⬛⬛⬛⬛⬛⬛⬛⬛⬛1564

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Hearing Impaired: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |



00029752 DRE 802 141 18211 - NNNNNNNNNNN T  1  000000000  62 0000
LAW OFFICE OF JERRY M MIMS
IOLA TRUST ACCOUNT
130 BARTON AVE
PATCHOGUE NY 11772-1402

**Effective July 17, 2011, we are making changes to the following sections of our Funds Availability Policy for business accounts:**

·  "For Chase Commercial Checking (with or without Interest):"
"Next Day Availability:"  If you make the deposit in person to one of our employees, funds from the following deposits are also available on the first business day after the day we receive your deposit:
·  Federal Reserve Bank checks, Federal Home Loan Bank checks, and postal money orders that are payable to you.
·  State and Local government checks that are payable to you if you use a special deposit slip available at any branch upon request.
·  Cashier's, certified, and teller's checks that are payable to you if you use a special deposit slip available at any branch upon request.
"Second Business Day Availability:" At least the first $200 of these deposits will be available on the first business day after the day of your deposit.
·  "Longer Delays May Apply:"
"For all business accounts other than Chase Commercial Checking (with or without interest):" At least the first $200 of these deposits will be available on the first business day after the day of your deposit.

All other terms of your account remain the same. If you have any questions, please call us at 1-800-CHASE38 (1-800-242-7338).

## CHECKING SUMMARY    IOLTA Account

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$377.18** |
| Deposits and Additions | 5 | 498,459.48 |
| Checks Paid | 45 | - 102,231.90 |
| Electronic Withdrawals | 1 | - 395,291.72 |
| Fees and Other Withdrawals | 2 | - 500.07 |
| **Ending Balance** | **53** | **$812.97** |
| | | |
| Interest Earned This Period | | $0.07 |
| Interest Paid Year-to-Date | | $0.76 |

 CHASE

June 01, 2011 through June 30, 2011

Account Number: ●━━━━━━━━64

## BALANCING YOUR CHECKBOOK

**Note: Ensure your checkbook register** is up to date with all transactions to date whether they are included on your statement or not.

1. **Write in the Ending Balance shown on this statement:**          Step 1 Balance:   $_____

2. **List and total all deposits & additions  not shown on this statement:**

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |

Step 2 Total:    $_____

3. **Add Step 2 Total to Step 1 Balance.**          Step 3 Total:    $_____

4. **List and total all checks, ATM withdrawals, debit card purchases and other withdrawals
   not shown on this statement.**

| Check Number or Date | Amount | Check Number or Date | Amount |
|----------------------|--------|----------------------|--------|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

Step 4 Total:   -$_____

5. **Subtract Step 4 Total from Step 3 Total. This should match your Checkbook Balance:**    $_____

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**Call or write us at the phone number or address on the front of this statement (non-personal accounts contact Customer Service) if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.  We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:
  • Your name and account number
  • The dollar amount of the suspected error
  • A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:**Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you.  For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account.

 **JPMorgan Chase Bank, N.A. Member FDIC**

## CHASE ◼

June 01, 2011 through June 30, 2011
Account Number: ███████████

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 06/01 | Deposit    895406445 | $497,327.71 |
| 06/08 | Deposit    229803215 | 31.70 |
| 06/13 | Deposit    890617032 | 900.00 |
| 06/15 | Deposit    889417582 | 200.00 |
| 06/30 | Interest Payment | 0.07 |
| **Total Deposits and Additions** | | **$498,459.48** |

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT | |
|-----------|-------------|-----------|--------|--|
| 3337 ^ | | 06/08 | $15,000.00 | *Anthony* |
| 3368 * ^ | | 06/08 | 59.76 | |
| 3370 * ^ | 06/02 | 06/02 | 3,500.00 | |
| 3372 * ^ | 06/03 | 06/03 | 450.00 | |
| 3373 ^ | 06/01 | 06/01 | 150.00 | |
| 3375 * ^ | | 06/02 | 16,500.00 | *P m advisory* |
| 3377 * ^ | | 06/02 | 6,588.97 | *Taxes* |
| 3378 ^ | | 06/02 | 3,719.58 | *Taxes* |
| 3379 ^ | | 06/02 | 10,308.53 | *Taxes* |
| 3380 ^ | | 06/02 | 1,339.06 | *Taxes* |
| 3381 ^ | | 06/02 | 1,264.66 | *Taxes* |
| 3382 ^ | | 06/02 | 3,000.00 | *Five Star* |
| 3383 ^ | | 06/06 | 800.00 | *Land Surveyor* |
| 3385 * ^ | | 06/02 | 16,500.00 | *Anthony Galt* |
| 3386 ^ | 06/02 | 06/02 | 2,000.00 | |
| 3388 * ^ | 06/02 | 06/02 | 7,500.00 | *mc* |
| 3389 ^ | | 06/08 | 1,750.00 | |
| 3391 * ^ | | 06/07 | 395.00 | |
| 3392 ^ | 06/06 | 06/06 | 200.00 | |
| 3393 ^ | 06/06 | 06/06 | 500.00 | |
| 3394 ^ | | 06/17 | 89.64 | |
| 3397 * ^ | 06/07 | 06/07 | 500.00 | |
| 3398 ^ | 06/08 | 06/08 | 1,200.00 | |
| 3399 ^ | 06/08 | 06/08 | 1,500.00 | |
| 3400 ^ | 06/13 | 06/13 | 500.00 | |
| 3401 ^ | 06/13 | 06/13 | 500.00 | |
| 3402 ^ | 06/11 | 06/13 | 600.00 | |
| 3403 ^ | | 06/22 | 89.64 | |
| 3404 ^ | 06/14 | 06/14 | 400.00 | |
| 3405 ^ | 06/15 | 06/15 | 300.00 | |
| 3406 ^ | | 06/16 | 500.00 | |
| 3407 ^ | 06/17 | 06/17 | 200.00 | |
| 3408 ^ | 06/16 | 06/16 | 150.00 | |
| 3409 ^ | 06/18 | 06/20 | 500.00 | |
| 3410 ^ | 06/21 | 06/21 | 550.00 | |
| 3411 ^ | 06/17 | 06/17 | 350.00 | |



**CHASE**

June 01, 2011 through June 30, 2011

Account Number: ████████564

## CHECKS PAID (continued)

| CHECK NO. | | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|---|
| 3412 | ^ | | 06/28 | 62.06 |
| 3413 | ^ | | 06/23 | 45.00 |
| 3414 | ^ | 06/22 | 06/22 | 250.00 |
| 3415 | ^ | 06/22 | 06/22 | 300.00 |
| 3416 | ^ | 06/24 | 06/24 | 200.00 |
| 3417 | ^ | 06/28 | 06/28 | 120.00 |
| 3418 | ^ | | 06/28 | 150.00 |
| 3421 | * ^ | 06/29 | 06/29 | 450.00 |
| 3423 | * ^ | 06/30 | 06/30 | 1,200.00 |
| **Total Checks Paid** | | | | **$102,231.90** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements.

^ An image of this check may be available for you to view on Chase.com.

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/02 | 06/02 Fedwire Debit Via: North Fork Bank/021407912 A/C: Certilman Balin Adler & Hyman Ref: Reference Long Island Capital Management Corp. - Silver Sands Motel Imad: 0602B1Qgc01C002021 Trn: 0533900153Es | $395,291.72 |
| **Total Electronic Withdrawals** | | **$395,291.72** |

## FEES AND OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/06 | 06/04 Withdrawal | $500.00 |
| 06/30 | Service Fee | 0.07 |
| **Total Fees & Other Withdrawals** | | **$500.07** |

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|
| 06/01 | $497,554.89 | 06/17 | 4,729.67 |
| 06/02 | 30,042.37 | 06/20 | 4,229.67 |
| 06/03 | 29,592.37 | 06/21 | 3,679.67 |
| 06/06 | 27,592.37 | 06/22 | 3,040.03 |
| 06/07 | 26,697.37 | 06/23 | 2,995.03 |
| 06/08 | 7,219.31 | 06/24 | 2,795.03 |
| 06/13 | 6,519.31 | 06/28 | 2,462.97 |
| 06/14 | 6,119.31 | 06/29 | 2,012.97 |
| 06/15 | 6,019.31 | 06/30 | 812.97 |
| 06/16 | 5,369.31 | | |

**Chase Online**

**Thursday, May 22, 2014**

## Check Details for Check Number 3337

| Post Date | Amount | Account number | Routing number |
|---|---|---|---|
| 06/08/2011 | $15,000.00 | | 021000021 |

## Check Images (Front and Back)





This information is provided for your convenience and does not replace your monthly account statement(s),
which are the official records of your accounts and does not replace any other notice we send you.
JPMorgan chase Bank, N.A. Member FDIC

© 2014 JPMorgan Chase & Co.

**Chase Online**

**Thursday, May 22, 2014**

**Check Details for Check Number 3381**

| Post Date | Amount | Account number | Routing number |
|-----------|--------|----------------|----------------|
| 06/02/2011 | $1,264.66 | | 021000021 |

**Check Images (Front and Back)**

```
                                                              3381
    LAW OFFICE OF JERRY M. MIMS, P.C.
              IOLTA ACCOUNT
              130 BARTON AVE.                                        12
           PATCHOGUE, NY  11772-1402          DATE May 31 2011      2/10

PAY
TO THE     Suffolk County Treasurer                     $ 1,264 66/100
ORDER OF
   One thousand two hundred and Sixty four        66/100    DOLLARS

    CHASE
    JPMorgan Chase Bank, N.A.
    New York, New York 10017
    www.Chase.com              Jerome Bodow
FOR
 Dist. 1000, Sec. 045.00, Blk 06.00, Lot 0001.060
```

This information is provided for your convenience and does not replace your monthly account statement(s), which are the official records of your accounts and does not replace any other notice w e send you.
JPMorgan chase Bank, N.A. Member FDIC

© 2014 JPMorgan Chase & Co.

**Chase Online**

**Thursday, May 22, 2014**

## Check Details for Check Number 3379

| Post Date | Amount | Account number | Routing number |
|---|---|---|---|
| 06/02/2011 | $10,308.53 | ~~████~~ | 021000021 |

## Check Images (Front and Back)

LAW OFFICE OF JERRY M. MIMS, P.C.
IOLTA ACCOUNT
130 BARTON AVE.
PATCHOGUE, NY 11772-1402

3379

DATE May 31 2011

PAY TO THE ORDER OF _Suffolk County Treasurer_    $ 10,308 53/100

_Ten thousand three hundred and eight_ 53/100 DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
New York, New York 10017
www.Chase.com

FOR _Distr 1600, Sec 047.000, Blk 02.000, Lot 011.000_

101-6858936085 PK
06/02/2011  NJ  Capital One
MATTITUCK, NY

FOR DEPOSIT ONLY
SUFFOLK COUNTY TREASURER
ANGIE M. CARPENTER, CO. TREAS.
4224095334

This information is provided for your convenience and does not replace your monthly account statement(s), which are the official records of your accounts and does not replace any other notice we send you.
JPMorgan chase Bank, N.A. Member FDIC

© 2014 JPMorgan Chase & Co.

**Chase Online**

**Thursday, May 22, 2014**

**Check Details for Check Number 3375**

| Post Date | Amount | Account number | Routing number |
|---|---|---|---|
| 06/02/2011 | $16,500.00 | | 021000021 |

**Check Images (Front and Back)**



LAW OFFICE OF JERRY M. MIMS, P.C.
IOLTA ACCOUNT
130 BARTON AVE.
PATCHOGUE, NY 11772-1402

3375

DATE June 2, 2011

PAY TO THE ORDER OF PM Advisory Group        $ 16,500 XX

Sixteen thousend five hundred Dollas        DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
New York, New York 10017
www.Chase.com

FOR Rent

This information is provided for your convenience and does not replace your monthly account statement(s),
which are the official records of your accounts and does not replace any other notice we send you.
JPMorgan chase Bank, N.A. Member FDIC

© 2014 JPMorgan Chase & Co.

**Chase Online**

**Thursday, May 22, 2014**

---

**Check Details for Check Number 3388**

| Post Date | Amount | Account number | Routing number |
|---|---|---|---|
| 06/02/2011 | $7,500.00 | | 021000021 |

**Check Images (Front and Back)**

LAW OFFICE OF JERRY M. MIMS, P.C.
IOLTA ACCOUNT
130 BARTON AVE.
PATCHOGUE, NY 11772-1402

3388
12
210-847

DATE June d791

PAY TO THE ORDER OF _Jerry M Mims_____ | $7,500 XX

_Seven thousand five hundred dollar_____ DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
New York, New York 10017
www.Chase.com

FOR ____Burner_____

This information is provided for your convenience and does not replace your monthly account statement(s),
which are the official records of your accounts and does not replace any other notice we send you.
JPMorgan chase Bank, N.A. Member FDIC

© 2014 JPMorgan Chase & Co.

**Chase Online**

**Thursday, May 22, 2014**

## Check Details for Check Number 3382

**Post Date**
06/02/2011

**Amount**
$3,000.00

**Account number**

**Routing number**
021000021

### Check Images (Front and Back)

LAW OFFICE OF JERRY M. MIMS, P.C.
IOLTA ACCOUNT
130 BARTON AVE.
PATCHOGUE, NY 11772-1402

3382

$\frac{12}{210}$ 647

DATE June 1 2011

PAY TO THE ORDER OF  Five Star Coverage

$ 3000 XX

three thousand dollar                    DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
New York, New York 10017
www.Chase.com

FOR  order

This information is provided for your convenience and does not replace your monthly account statement(s), which are the official records of your accounts and does not replace any other notice w e send you.
JPMorgan chase Bank, N.A. Member FDIC

© 2014 JPMorgan Chase & Co.

UNITED STATES BANKTRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

Case No. 15-73752-LAS          Chapter 13

In re:  JERRY MIMS,

      Debtor(s).

## AFFIRMATION IN SUPPORT

**WEBER LAW GROUP LLP**
*Attorneys for Plaintiffs*
*Office and Post Office Address, Telephone*
290 BROADHOLLOW ROAD, SUITE 200E
MELVILLE, NEW YORK  11747
TELEPHONE:  (631) 549-2000

| To | Signature (Rule 130-1.1-a) |
| --- | --- |
| Attorney(s) for | Print name beneath      Jaret Weber, Esq. |

Service of a copy of the within                                             is hereby admitted.
Dated,

                        Attorney(s) for

Please take notice
□ NOTICE OF ENTRY
That the within is a (certified) true copy of a
Duly entered in the office of the clerk of the within named court on
□ NOTICE OF SETTLEMENT
That an order                                    of which the within is a true copy will be presented for
Settlement to the HON.                                                One of the judges
Of the within named Court, at
On                                    at
Dated,                                              Yours, etc.
                             WEBER LAW GROUP LLP
To                                                      *Office and Post Office Address*
                             290 BROADHOLLOW ROAD
                             SUITE 200E
Attorney(s) for                                        MELVILLE, NEW YORK  11747